**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
|     PLAINTIFF ) | 3:23-CR-62 (OAW) |
| VS. ) | |
| ) | |
| WILLIS TAYLOR ) | |
|     DEFENDANT ) | APRIL 3, 2025 |

_____

## SENTENCING MEMORANDUM ON BEHALF OF WILLIS TAYLOR

Mr. Taylor was arrested on March 28, 2023, and charged with narcotics offenses for his involvement in a 13-member conspiracy to possess and distribute controlled substances. On September 4, 2024, he pleaded guilty to one count of Conspiracy to Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(A)(v), 841 (b)(1)(A)(viii), 841 (b)(1)(B)(i), and 841 (b )(1)(B)(ii). He faces a statutory mandatory minimum of 10 years and up to life imprisonment, five years to lifetime supervised release, up to a $10 million fine and a $100 special assessment.

Since he entered his plea, he has sat for a safety-valve proffer and is eligible to less than the mandatory minimum sentence. He also contends below that pursuant to subdivisions (1)-(5) of 18 U.S.C.3553(f), he is eligible for a sentence without regard to any applicable mandatory minimum. Accordingly, he asks for a sentence of no more than five years imprisonment for the instant offense.

I.   **Sentencing Factors**

Section 3553(a) requires consideration of the following factors:

- The nature and circumstances of the offense and the history and characteristics of the defendant (subsection (a)(1));

- The need for the sentence to reflect the seriousness of the offense, promote respect for the law and to provide just punishment (subsection (a)(2)(A));

- The need for adequate deterrence to criminal conduct (subsection(a)(2)(B));

- The need to protect the public from further crimes by the defendant (subsection (a)(2)(C));

- The effort to assure rehabilitation of the defendant by such services as the Bureau of Prisons may provide (subsection (a)(2)(D)).

II.  **Nature of the Offense**

Mr. Taylor cooperated in a conspiracy to distribute wholesale quantities of counterfeit oxycodone pills, which contained fentanyl, and Adderall tablets, which contained methamphetamine. In particular, he produced the pills after receiving raw material from others involved in the conspiracy. The conspirators also distributed other controlled substances. Presentence Report, hereinafter "PR," paras. 17-20. The plea agreement reflects Mr. Taylor's acknowledgement that he is responsible for distributing 1,787.009 grams of fentanyl, 340.7 grams of fentanyl analogue, 703.858 grams of methamphetamine and 506.195 grams of cocaine. PR, para. 32.

III. **Guidelines Sentence**

By application of the converted drug weight conversion analysis, Mr. Taylor possessed between 10,000 and 30,000 kilograms of converted drug weight, yielding a base offense level of 34. PR, para. 36. His base offense level was enhanced two points for maintaining a premise for the purpose of manufacturing a controlled substance. Para.

2

37. Four additional points were added for knowingly marketed as another substance a mixture or substance containing fentanyl. PR, para. 38. His level was reduced by two points for giving a "complete and truthful account of his role in the offense." PR, para. 39. After a three-point reduction for acceptance of responsibility and a two-point reduction for his status as a Zero-Point Offender, Mr. Taylor's recommended total offense level is 33. PR., para. 47.

Despite considerable interaction with the criminal justice system more than 30 years ago, Mr. Taylor has zero criminal history points and presents for sentencing as a Criminal History I. Mr. Taylor has a case pending in the Judicial District of New Haven at New Haven – G.A. 23, arising from the conduct giving rise to his federal arrest, in which he is represented by the undersigned. PR, para. 64. Despite the contention in the Presentence Report that Mr. Taylor also has a case pending in the Superior Court for the Judicial District of Milford at Milford, the undersigned is unaware of any such case, and the Judicial Website reflects no such case. The undersigned notes that the date of Milford arrest as reflected in the report, November 18, 2022, is the date of the search of Mr. Taylor's home in the instant case. Upon information and belief, the Milford case was nolle'd[1]. PR, para. 65.

Given his criminal history of one and the total offense level of 33, Mr. Taylor's guideline imprisonment range is 135 months to 168 months. PR, para. 106. He faces a 10-year mandate.

---

[1] The undersigned reaches this conclusion after discussing the matter with a clerk in the State's Attorney's office in Milford.

### IV.     Defendant's Character

Mr. Taylor grew up amid adversity and turned to heroin as a pre-adolescent to help him escape the grimness of his circumstances, which included both physical and sexual abuse. PSR, Paras. 68-70. He also turned to criminal activity as a pre-adolescent living on streets. Id., Para. 73. He was a regular drug abuser from age 11 until 1988, when he was 32-years-old. Id., Paras. 83, 84. He returned to drug use briefly after the break-up of a marriage in 2016. In 2022, he again turned to drug abuse as he coped with financial distress. Id., Para. 84. As reflected in the PSR, he had a periodic and lengthy involvement with the criminal justice system from age 17 until age 32. Id., Paras. 52-59. He suffers from bipolar disorder and depression. Id., Para. 86. Mindful of the needs of others who struggle with adversity, he has done charitable work throughout his life in New Haven and Branford. Id., Para. 99.

His involvement in the instant criminal conspiracy is coincidental with his most recent relapse into narcotics abuse. He currently maintains sobriety with the assistance of methadone.

He is 68 years old. He understands the seriousness of his criminal conduct, has entered a guilty plea, and is prepared to accept significant sentence to pay for it.

### V.     Safety-Valve Eligibility

Mr. Taylor is safety-valve eligible as having provided at a proffer a "complete and truthful statement about his role in the offense." PSR, Id., Para. 39. The undersigned regrets the departure from Government service of Attorney Ross Weingarten, who

4

represented the Government at the proffer, as Attorney Weingarten could attest to the extraordinary candor of Mr. Taylor at the proffer.

### VI.     Mr. Taylor Meets the Requirements of 18 U.S.C. Section 3553(f)

As noted by the author of the PSR, this Court can impose a sentence without regard to a statutory minimum if the court finds that Mr. Taylor meets the requirements of 18 U.S.C. Section 3553(f)[2]. Mr. Taylor contends that he meets those requirements.

#### 1.  Criminal History

As a criminal history 1, Mr. Taylor satisfies by definition the requirements of subsection one of Section 3553(f). He has fewer than four criminal history points, no prior 3-point offense and no prior two-point violent offenses.

#### 2.  Violence Firearms

Mr. Taylor did not use violence or credible threats of violence in the instant offense. Neither did he possess a firearm. Therefore, he satisfies the requirements of subsection two of Section 3553(f). This might be a closer call in the Court's view, given the fact that the search of his home in West Haven in November 2022 did discover .22 caliber ammunition. PSR, Para. 65. Nothing in the record suggests that he possessed an actual firearm "in connection with the offense."

---

[2] The Court "shall impose a sentence … without regard to any statutory mandatory minimum, if the court finds at sentencing" that the following five conditions are met:
  1. The defendant has 4 or fewer criminal history points, no prior 3-point offense, and no prior 2-point violent offense;
  2. The defendant neither used violence nor the threat of violence or a firearm in the subject offense;
  3. The offense did not result in death or serious bodily injury to a person;
  4. The defendant was not in a leadership role in or otherwise in a continuing criminal enterprise;
  5. Satisfies the requirements of a safety valve proffer.

18 U.S.C. Section 3553(f)(1-5)(paraphrasing).

### 3. Death or Serious Bodily Injury

There is no claim in this case that the criminal conduct resulted in death or serious physical injury to another.

### 4. Offense Role and Character

While Mr. Taylor's role in the conspiracy was significant, it was not, as a matter of law, the role of an organizer, leader, manager or supervisor of others. Neither was he charged with an offense supporting a finding that he was involved with a "continuing criminal enterprise" under 21 U.S.C. Section 848.

### 5. Candid Disclosure

As noted above, Mr. Taylor truthfully proffered prior to sentencing.

## VII. Sentencing Factors Applied in This Case

Among the reasons to impose a criminal sanction are rehabilitation, deterrence, punishment and protection of society. A sentence should be sufficient, but no greater than necessary, to accomplish those purposes.

There is no question that the criminal conduct in this case was significant and harmful to society. Fentanyl, in particular, is a scourge, resulting in many deaths. The production of distribution of fentanyl in a disguised form is chilling. This prosecution ended the defendant's participation in a group that engaged in this practice. Several of the defendants went to trial and will face significant sentences. Others have entered pleas and been sentenced, Mr. Taylor accepted responsibility for his role in the conspiracy and expects incarceration. As a lifelong narcotics addict who has spent the better part of his adulthood recovery from narcotics addiction he appreciates firsthand the danger his conduct presented to society.

The general deterrent value of a sentence of incarceration is questionable. The federal Government has been engaged in a decades-long effort to stem illegal narcotics trafficking through aggressive prosecution. We are no closer to winning the so-called war on drugs than we were when this effort started. Even so, if Congress determines, as it has, that sending folks to prison as part of its effort to stem the use and distribution of narcotics is sound public policy, then incarceration is appropriate as a general matter. Arguably, it deters someone.

In terms of specific deterrence, it bears noting that despite Mr. Taylor's lengthy involvement with the criminal justice system, prior to this offense, his longest period of incarceration was eight months. He spent more time behind bars as a pre-plea detainee in this case than that. He is now 68-years-old and in poor health. While incarcerated he has once again achieved and maintained sobriety. He full well understands that he could well spend the rest of his life behind bars. It cannot be said that the prospect of a lifelong sentence was not a material factor in his successful safety-valve proffer and his efforts to regain control of his life. The undersigned contends that the specific deterrent effect of this prosecution has already been realized.

Rehabilitation is active and underway in Mr. Taylor's case. Although he has spent the majority of his time behind bars in a state community correction center, where programs are not widely available, he has made the most of his time. He is sober, insight oriented, and dedicated to the welfare of his family. If permitted to do so, he hopes to end his life at liberty in his home, surrounded by loved ones.

As in any violation of the law, punishment is appropriate. Mr. Taylor contends that given his advance age, and poor health, the Court impose a more modest sentence than

we be imposed on a younger man. Simply put, sentencing a 68-year-old man in poor health to 10-years may well be tantamount to a life sentence.

### VIII.    Requested Sentence

Mr. Taylor requests imposition of a sentence of no more than five years.

DEFENDANT, WILLIS TAYLOR

**By:    /s/    Norman A. Pattis, Esq.**
Norman A. Pattis, Esq.
Pattis & Paz, LLC
383 Orange St., 1st Floor
New Haven, CT  06511
Tel:    (203) 393-3017
Fax:    (203) 393-9745
Federal Bar No:  ct13120
Email:    npattis@pattispazlaw.com

**CERTIFICATION**

I hereby certify that on April 3, 2025, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                           **/s/    Norman A. Pattis, Esq.**
                                           Norman A. Pattis, Esq.