# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:23-cr-00062 (OAW) |
| | : | |
| v. | : | |
| | : | |
| WILLIS TAYLOR | : | April 11, 2025 |

## **GOVERNMENT'S SENTENCING MEMORANDUM**

The defendant, Willis Taylor, was the central spoke in a sprawling hub of a drug conspiracy based in and around New Haven, Connecticut. The drugs the defendant sold varied widely but included the most deadly known in the streets: fentanyl, methamphetamine, heroin, cocaine, and others. Worse – the defendant *pressed these pills* to make them appear to be prescription medication to the unaware buyer. This notwithstanding his first-hand knowledge of how deadly his drugs were – he ensured he had Narcan on hand when he tested his poison and *had someone overdose in his residence during the pendency of the investigation*. He nonetheless continued to sell pills. The defendant also worked with Latin King members to help obtain the raw materials to make the pills. He had a disassembled firearm in his residence. In short: he engaged in grave misconduct. While the total number of counterfeit pills he was responsible for creating and distributing will never be known, the quantities easily reached the tens of thousands.

Given this misconduct, a sentence within the defendant's guidelines range of 135 to 168 months' imprisonment is a sentence sufficient but not greater than necessary to comply with the purposes of a criminal sentence.

1

I.  **BACKGROUND**

  a. **Procedural History**

The defendant was the primary subject of a Title III wiretap investigation. He and thirteen other individuals were indicted for drug trafficking offenses on April 4, 2023. Taylor in particular was charged with:

- Conspiracy to sell 400 grams or more of fentanyl, 500 grams or more of methamphetamine, 100 grams or more of heroin, and 500 grams or more of cocaine in Count One;

- Possession with intent to distribute and distribution of methamphetamine in Count Four;

- Possession with intent to distribute 500 grams or more of methamphetamine, 100 grams or more of heroin, and 500 grams or more of cocaine in Count Six; and

- Possession with intent to distribute 40 grams or more of fentanyl and 50 grams or more of methamphetamine in Count Seven.

Doc. No 21.

The defendant pleaded guilty on September 4, 2024 to Count One of the indictment. *See* Docs. No. 738, 740.

Sentencing is set for April 22, 2025. *See* Doc. No. 1410.

  b. **The Drug Trafficking Organization**

Given the recent trial of Taylor's codefendants, Pappas, Gumbs, Lauria, and Echevarria, the Court is broadly familiar with the extent of the defendant's misconduct. The PSR accurately captures the misconduct as well. *See* PSR ¶¶ 16–32. Suffice it to say, the defendant was a large-scale poly-substance drug dealer and counterfeit pill manufacturer.

Taylor's DTO was based in and around New Haven. Broadly speaking, Taylor would obtain drugs from various individuals, including Pappas and others, sell them, or press them into pills and sell them.

He pressed pills in various locations, including at 26 Kendall Street, New Haven, Connecticut as well as a trailer that was searched 28 North Branford Road in Branford, Connecticut. He also kept presses at his girlfriend Jeanne Taylor's residence located at 65 Saginaw in Shelton, CT – as well as a disassembled firearm.



[Excerpts from GX 390 from recent trial depicting 26 Kendall Street]

3






[Excerpts from GX 150 depicting contents of trailer recovered from 28 North Branford Road]





[Excerpts from GX 392 depicting items found at 65 Saginaw in Shelton, CT]

At his residence, ledges as well as papers with instructions on how to make drugs was found evincing that the defendant was pressing counterfeit pills.



[Excerpts from GX 340 depicting items from 67 Edwards Street, Taylor's residence]

And during the searches that were executed as a part of the investigation – significant quantities of drugs were recovered. On October 20, 2022, the defendant was stopped in a vehicle – after being directed by his girlfriend to clear the drugs out of her house – with what can only be characterized as a mobile drug lab and exorbitant quantities of narcotics:

| 106 | October 20, 2022 | Fentanyl, Heroin | 127.8 grams |
| 107 | October 20, 2022 | Methamphetamine | 219.1 grams |
| 108 | October 20, 2022 | Heroin, Fentanyl, Cocaine | 124.3 grams |
| 109 | October 20, 2022 | Cocaine | 184.8 grams |
| 110 | October 20, 2022 | Fentanyl, Alprazolam, Cocaine, Heroin | 121.7 grams |
| 111 | October 20, 2022 | Fentanyl, Tramadol, Heroin | 124.1 grams |
| 112 | October 20, 2022 | Fentanyl, Heroin, Tramadol | 335.3 grams |
| 113 | October 20, 2022 | Fentanyl, Heroin | 63.5 grams |
| 114 | October 20, 2022 | Cocaine | 15.3 grams |
| 115 | October 20, 2022 | Cocaine | 117.2 grams |
| 116 | October 20, 2022 | Fentanyl, Tramadol | 189.1 grams |
| 117 | October 20, 2022 | Methamphetamine | 10.219 grams |
| 118 | October 20, 2022 | Fentanyl | 98.210 grams |
| 119 | October 20, 2022 | Fentanyl, Cocaine, Heroin | 5.36 grams |
| 120 | October 20, 2022 | Fentanyl, Alprazolam, Cocaine | 373.1 grams |
| 121 | October 20, 2022 | Marijuana | 29.4 grams |
| 122 | October 20, 2022 | Fentanyl, Heroin, Cocaine | 277.2 grams |
| 123 | October 20, 2022 | Fentanyl, Heroin, Tramadol | 149.2 grams |
| 124 | October 20, 2022 | Fentanyl | .9 grams |

| 125 | October 20, 2022 | Cocaine | 28.5 grams |
| 126 | October 20, 2022 | Cocaine | 155.5 grams |
| 127 | October 20, 2022 | Alrazolam, Cocaine, Methamphetamine | 32.8 grams |
| 128 | October 20, 2022 | Methamphetamine | 201.2 grams |
| 129 | October 20, 2022 | Methamphetamine | 1.7 grams |
| 130 | October 20, 2022 | Methamphetamine | 104.3 grams |
| 131 | October 20, 2022 | Methamphetamine | 261 grams |
| 132 | October 20, 2022 | Methamphetamine | 41.4 grams |

[GX 611 – Summaries of lab reports from seizure on October 20, 2022]

During trial, the officer who stopped the defendant characterized this seizure as "once in a career" quantities of narcotics.



[Excerpt from GX 103 and 104 – pictures of vehicle where drugs were located]

Likewise at his residence, significant quantities of narcotics were recovered, including counterfeit pills and other controlled substances.

8



GOVERNMENT EXHIBIT 340 - PAGE 18

The defendant was well aware of the dangers associated with the substances he sold – and he sold them for one reason only: to make money. *See* GX 2 (Talyor explaining to Lauria that the only way he makes money with Pappas is when he sells drugs).

Most concerningly (though not surprisingly), the defendant was acutely aware of the dangerousness of the drugs he sold. He and his codefendant, Sean Pepe, used to test their product together, but would make sure they had Narcan on hand in case they overdosed. *See* GX 12 ("I couldn't test no Narcan and nobody's standing by so there was nothing I could do I just tried a little bit now but I'm still afraid to try it correctly.").

Taylor was also aware of other individuals who overdosed on fentanyl and died. For instance, one individual, Brian Dorsi, died of an overdose *at Taylor's residence* at 67 Edwards Street on May 7, 2022. Taylor spoke about this overdose explicitly on a call with his codefendant

9

Mark Apotrias. *See* Session Number 1298 (July 6, 2022 call in which Taylor recount's "Brian's" overdose in his house, the "gargling in his chest"). He also was explicit that he asked the person who called 911 to "give me eight minutes" before calling 911 to give him the chance to clear out his house. *Id.*

With respect to the pressed pills in particular, the defendant knew that the pressed pills he made were stronger than legitimate pills. He was explicit about this during the period of intercepts and the associated dangers of selling his drugs:

| | |
|---|---|
| TAYLOR: | I mean. I assume... The other thing with me... I don't know, I... Tommy probably told you right from the beginning. Or at least I probably mentioned it... when you were around. I don't want anybody saying these fucking things are pharmaceutical. |
| APOTRIAS: | No. |
| TAYLOR: | If I, if I hear it and it sounds like they're pharmaceutical: don't even look to come to me anymore. |
| APOTRIAS: | No fucking way. |
| TAYLOR: | Be- because when you tell them they're not pharmaceutical, they've gotta have enough sense to [Stammers] [Voices Overlap] |
| APOTRIAS: | Yeah. [Voices Overlap] |
| TAYLOR: | To err, you know, on the... On the... You know, do half (½). [Voices Overlap] |
| APOTRIAS: | You're signing their death certificate if you say that. |
| TAYLOR: | Mm-hm. |
| APOTRIAS: | If there's no one [UI] [Voices Overlap] |

*Id.* And while he "didn't want anybody saying these . . . things are pharmaceutical" that did not stop him from manufacturing them to *appear to be* pharmaceutical.

 

GOVERNMENT EXHIBIT 340 - PAGE 21                GOVERNMENT EXHIBIT 340 - PAGE 29

[Counterfeit Xanax containing methamphetamine (L) and counterfeit oxycodone containing fentanyl (R) found in Taylor's garage]

And, of course, once he sold them, they were into the distribution stream with the hallmarks of legitimacy.

Taylor's drug business also involved buying drugs from Markos Pappas – a regional leader of the Latin Kings. Taylor was aware of Pappas' gang affiliation, as was clear from the wire intercepts. *See* Session Number 3761 (October 10, 2022 call between Taylor and Lauria discussing Pappas' failing business because of its gang affiliation). Notwithstanding knowledge of Pappas' affiliation, Taylor dealt with Pappas regularly and received drugs from him. *See, e.g.*, GX 250, 251, 252 (messages arranging a meeting between Pappas and Taylor on October 10, 2022); *see also* GX 255 (picture of kilogram dropped off by Pappas to Taylor on the same date).

11



[GX 255 – picture of kilo of controlled substance dropped off by Pappas to Taylor on 10/10/22]

## II. STATUTORY AND GUIDELINES EXPOSURE

### A. Statutory Exposure

Based on his plea of guilty to a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), the defendant faces a maximum term of imprisonment of life. But for his safety-valve eligibility he would be facing a mandatory minimum sentence of ten years. In addition, the Court may impose a term of supervised release of at least five years and up to life to begin after any term of imprisonment.

The Government and defendant recognized in the Plea Agreement that the defendant meets the statutory requirements under the 'safety valve' provision of 18 U.S.C. § 3553(f)(1)-(5). As such, if the Court agrees that the defendant meets the statutory safety valve requirements under 18 U.S.C. § 3553(f)(1)-(5), the Court may impose a sentence without regard to the mandatory minimums that would otherwise apply. 18 U.S.C. § 3553(f). Notably in this regard, AUSA Weingarten who conducted the safety-valve proffer reported that the defendant was candid and forthright.

The offense carries a maximum fine of $1,000,000.  Under 18 U.S.C. § 3013, a special assessment of $100 is mandatory.  Restitution is not applicable in this case. 18 U.S.C. § 3663.

### B. Guidelines for the Instant Offense and Parties' Agreement

The Government has no objection to the PSR's calculation of the guidelines range. Specifically, the defendant is a criminal history category I and his total offense level is 33. The resulting range is therefore 135 months to 168 months. *See* PSR ¶ 106.

### III. DISCUSSION

### A. Nature and Circumstances of the Offense

The defendant's offense was significant and serious. He sold kilograms of fentanyl, which is a scourge that has killed 8,745 people in Connecticut since 2015. *See* https://public.tableau.com/app/profile/heather.clinton/viz/SUDORS_Dashboard_final2/Overdose Dashboard (last visited April 11, 2025). The epidemic hit its peak during the pendency of the investigation, with 1,408 people overdosing due to opioids in 2021 and 1,333 overdosing in 2022. *Id.* Indeed, 447 people in New Haven County overdose on opioids during 2022 when the defendant peddled his poison.

13

The defendant, however, did not merely sell fentanyl, he pressed it into pill form to make it appear more benign than it was. And he did so in enormous quantities. This is a particularly aggravating factor as the risk of overdose increases significantly when an individual believes he or she is taking one drug but ends up ingesting fentanyl instead.

The defendant did this not only with fentanyl, but methamphetamine as well, making it appear to be Adderall.

The presence of a disassembled firearm is also concerning. While it may not technically satisfy the definition of a firearm for safety valve eligibility purpose – guns and drugs go together. Indeed, his codefendant Sean Pepe was arrested with multiple firearms and body armor. This is also an aggravating factor that should be considered by the Court.

### B. History and Characteristics of the Defendant

With respect to the defendant's history and characteristics, the Government acknowledges that this factor weighs in part in favor of leniency as described in the defendant's sentencing memorandum. But there is more to the story than just addiction.

As a preliminary matter, and as the defendant acknowledges, the defendant has a fairly significant record, including convictions for carrying a pistol without a permit, and being a felon in possession of a firearm. *See* PSR ¶¶ 52–59. While these convictions are too old to count for purposes of the sentencing guidelines, it belies any contention that the defendant has generally been a law-abiding person who made one or two small mistakes.

Moreover, the defendant's *knowledge* of how deadly these drugs were – to include an individual who died from an overdose in his house – shows a tremendous callousness on the defendant's behalf. And his decision to *continue* to sell pills after an overdose in his own residence shows what is, in candor, a real indifference to human life.

The defendant's decision to have the 911-caller wait eight minutes before calling 911 so he could clear out his residence is also extraordinarily problematic. In the call with Apotrias, he claimed that by the time he got to him the victim had already died and that he had been dead for half-an-hour. But the defendant is not a medical professional. Every minute could have mattered. The decision to delay help so that he could clear out the residence reinforced the fact that the defendant is indifferent to human life.

And, finally, the defendant's manufacturing of pills to appear to be one substance when in fact they contain one of the deadliest drugs available confirms the defendant's disregard for the safety and well-being of others. While the defendant may have said on one call that he did not want any one to think his pills were pharmaceuticals, that appears to be a bald attempt to absolve himself of guilt. The defendant still manufactured his pills to appear as though they were pharmaceuticals. And he knew enough to know that he needed Narcan to test his product. And once he sold them, he had no control over how they were presented to unsuspecting down-stream buyers beyond how he made them look: like legitimate medication.

This factor also augurs in favor of a lengthier term of imprisonment.

### C. Reflecting the Seriousness of the Offense and Promoting Respect for the Law, and Providing Just Punishment

A guideline sentence here is also important to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The defendant put poison in pills and made it appear as though it was medicine. He did so in enormous quantities. He casually drove through West Haven with quantities of narcotics characterized by one officer being "once in a career." He associated with known Latin King members in doing so. A sentence within the guidelines range also reflects the seriousness of the offense.

### D. Deterrence

With respect to general deterrence, the Government submits that a message has to be sent to those who would to the sort of harm that the defendant has done, both within New Haven and more broadly. In particular, the Government respectfully submits that the wanton recklessness that the defendant displayed in creating and selling these pills at the scale that he did needs to be addressed. Other would-be pill pressers need to know that producing counterfeit pills in these quantities will result in serious and significant consequences.

## IV. CONCLUSION

For these reasons, the Government respectfully submits that a sentence within the defendant's guidelines range of 135 to 168 months' imprisonment is a sentence sufficient but not greater than necessary to comply with the purposes of a criminal sentence.

Respectfully submitted,

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY


      /s/
JOHN T. PIERPONT, JR.
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv07973
John.Pierpont@usdoj.gov

C E R T I F I C A T I O N

       I hereby certify that on April 11, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                       /s/
                            JOHN T. PIERPONT, JR.
                            ASSISTANT UNITED STATES ATTORNEY